**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| DA LIQUIDATING CORP., F/K/A DELIVERY AGENT, INC., et al.,[1] | Case No. 16-12051 (LSS) |
| Debtors. | (Jointly Administered) |
| HALO BRANDED SOLUTIONS, INC., | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 17-_____ (LSS) |
| DA LIQUIDATING CORP. f/k/a DELIVERY AGENT, INC. and CLEAN FUN LIQUIDATING CORP. f/k/a CLEAN FUN PROMOTIONAL MARKETING, INC., | |
| Defendants. | |

**COMPLAINT FOR  SPECIFIC PERFORMANCE,**
**CONVERSION AND BREACH OF CONTRACT**

HALO Branded Solutions, Inc. ("HALO" or the "Plaintiff"), by and through its

undersigned counsel, Klehr Harrison Harvey Branzburg LLP, hereby brings this Complaint against

DA Liquidating Corp. f/k/a Delivery Agent, Inc. ("Delivery Agent") and Clean Fun Liquidating

Corp. f/k/a Clean Fun Promotional Marketing, Inc. ("Clean Fun" and, with Delivery Agent, the

"Defendants" or the "Sellers"), debtors and debtors-in possession in the above captioned cases,

seeking an order requiring: (a) the Sellers specifically perform obligations owed to HALO; (b) the

---

[1]  The debtors in these chapter 11 cases and the last four digits of each debtor's U.S. tax identification number are as follows:  DA Liquidating Corp. f/k/a Delivery Agent, Inc. (8744), MusicToday Liquidating LLC f/k/a Musictoday, LLC (7995), Clean Fun Liquidating Corp. f/k/a Clean Fun Promotional Marketing, Inc. (6635), and Shop the Shows Liquidating LLC f/k/a Shop the Shows, LLC (n/a).  The notice address for all of the debtors is:  300 California Street, 3rd Floor, San Francisco, California 94104.

Sellers deliver to HALO its personal property (valued at more than $480,000.00) over which the Defendants have wrongfully exercised dominion and control and the pay damages related thereto; and/or (c) the Sellers to pay over $480,000 in breach of contract damages.  In support thereof, the Plaintiff respectfully alleges as follows:

**JURISDICTION AND VENUE**

1.       The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(b) and (c).       Pursuant to Del. Bankr. L.R. 7008–1, Plaintiff consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

2.       This matter is a core proceeding under 28 U.S.C. §157(b)(2).

3.       Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

4.       This proceeding is brought pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure.

**PARTIES**

5.       Plaintiff HALO is a Delaware corporation with its principle place of business located at 1980 Industrial Drive, Sterling, IL 61081.  As described more fully below, pursuant to the Agreement approved by this Court pursuant to the Sale Order (as defined herein), HALO now conducts business at, among other locations, 3185, 3185A, 3186 and 3187 Pullman Street, in Costa Mesa, California, former business location of Clean Fun.

6.       Defendant Delivery Agent is a Delaware corporation with a business address of 300 California Street, 3rd Floor, San Francisco, California 94104.  Delivery Agent is a debtor and debtor-in-possession in Bankruptcy Case No. 16-12051 (LSS) pending in this Court.

2

7.      Defendant Clean Fun is a California Corporation with a business address of 300 California Street, 3rd Floor, San Francisco, California 94104.  Clean Fun is a debtor and debtor-in-possession in Bankruptcy Case No. 16-12051 (LSS) pending in this Court.

## FACTUAL BACKGROUND

8.      On September 15, 2016 (the "Petition Date"), Delivery Agent, Clean Fun and their Debtor affiliates (collectively, the "Debtors") filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

9.      Defendants continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Defendants' cases.  On September 29, 2016, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors [Docket No. 114].

10.      On September 26, 2016, the Debtors filed a *Motion for Orders (I)(A) Authorizing Debtors' Entry Into the Asset Sale Agreement with Respect to the Sale of the Clean Fun Business and Related Assets, (B) Authorizing and Approving the Bidding Procedures, (C) Approving Procedures Related to the Assumption of Certain Executory Contracts and Unexpired Leases; (D) Authorizing and Approving a Break-Up Fee, and (E) Approving the Sale Notice Procedures; (II) Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts; and (III) Granting Related Relief* (the "Sale Motion") [Docket No. 86].  The relief sought by the Sale Motion included, but was not limited to, approval of the Sale Agreement by and among Delivery Agent, Clean Fun and HALO.

11.     For several months prior to the Petition Date, the Debtors and their advisor Houlihan Lokey Capital, Inc. had attempted to sell all of the Debtors' business segments to no avail.  (Sale Motion, ¶ 10).  Prior to the Petition Date, the Debtors' prepetition secured lender agreed to provide debtor in possession financing (the "<u>DIP Lender</u>") and to become the stalking horse bidder for all aspects of the Debtors' business **except** for the Clean Fun Business.  (Sale Motion, ¶¶ 11 - 13).    The DIP Lender agreed only to fund a portion of the Clean Fun Business for a 30 day period while the Debtors pursued a sale of that business.  The DIP Agreement required that by October 14, 2016, the Clean Fun Business be either sold or closed.  (Sale Motion, ¶ 13).  Therefore, unless an interested party purchased the assets by that date, Clean Fun would be closed, "a scenario that would have a negative impact on stakeholders' recoveries." (<u>Id</u>.)

12.     Also prior to the Petition Date, HALO and the Debtors engaged in discussions regarding a potential sale of certain portions of the Clean Fun Business pursuant to section 363 of the Bankruptcy Code.  Those discussions continued postpetition, and led to an agreement (the "<u>Interim Contract</u>") pursuant to which HALO performed certain necessary interim services and provided working capital that allowed Clean Fun to continue in business pending the closing of a Court approved sale. (Sale Motion, ¶ 17).  But for HALO agreeing to perform the services and provide the funding set forth in the Interim Contract, the Clean Fun Business would have been "shuttered," as required under the terms of the DIP Agreement, to the detriment of creditors.

13.     In addition, the Debtors and HALO entered into a binding agreement pursuant to which HALO agreed to serve as the stalking horse purchaser in connection with the proposed sale of the Defendants' Clean Fun Business.  HALO was to acquire "substantially all of the assets, properties, rights and claims located and used at the …Costa Mesa facilities, or otherwise

directly and exclusively used in the Clean Fun Business…"  This specifically included "Accounts Receivable" and intellectual property used in the Clean Fun Business.  (Sale Motion, ¶ 26).

14.     On October 11, 2016 the Court entered the *Order Authorizing and Approving (A) the Sale of Certain Assets Free and Clear of All Liens, Claims, Encumbrances and Interests and (B) the Assumption and Assignment of Certain Contracts* (the "<u>Sale Order</u>") [Docket No. 186]. By the Sale Order, the Court approved that certain Asset Purchase Agreement, dated as of September 25, 2016 by and among HALO and the Defendants (the "<u>Sale Agreement</u>").

15.     Pursuant to section 1.2 (a) of the Sale Agreement, the property HALO acquired included, among other things, all Accounts Receivable (as defined in the Sale Agreement), which includes, among other things, all accounts receivable relating to the Clean Fun Business, and any payments from Account Obligors (as defined in the Sale Agreement) of the Clean Fun Business with respect to the Accounts Receivable (the "<u>Accounts Receivable Proceeds</u>").   After the Closing Date, the Sellers were not to attempt to collect any of the Accounts Receivable, and were to "promptly deliver to [HALO] any cash, checks or other property that they may receive after the Closing in respect of any" Accounts Receivable (i.e., any Accounts Receivable Proceeds). (Sale Agreement, § 5.20).

16.     The transaction contemplated by the Sale Agreement occurred on October 13, 2016 (the "<u>Closing Date</u>"), and on that date HALO paid the Purchase Price, which consisted of a cash payment of approximately $4.7 million to the Defendants, as required by the Sale Agreement.  HALO has been engaged since the Closing Date in discussions with the Defendants regarding the turnover of the Accounts Receivable Proceeds.  Despite HALO's best efforts to

5

reach a good faith resolution, the Defendants continue to hold the Accounts Receivable Proceeds, leaving HALO with no option other than to bring this lawsuit.

17.     Defendants have acknowledged that after the Closing Date they received and are in possession of over $480,000.00 of Accounts Receivable Proceeds, which are HALO's property pursuant to the Court approved Sale Agreement.  In an effort to avoid preliminary injunction proceedings, Sellers' counsel represented in an email to HALO's counsel dated January 13, 2017, that Accounts Receivable Proceeds in the amount of "$480,862 was transferred today to a segregated account at Silicon Valley Bank that will not be used absent the consent of HALO or court order."   However, upon information and belief, the Account Receivable Proceeds currently equal more than $484,000.00, and an accounting is demanded from Defendants.

18.     Despite HALO's good-faith efforts over several months to negotiate a consensual resolution, the discussions have not resulted in a resolution.

19.     Unfortunately, despite numerous demands by both HALO and its counsel, the Sellers' clear contractual responsibilities, and the provisions of the Court's Sale Order, as of the filing of this Complaint, the Sellers have refused to deliver the Accounts Receivable Proceeds to HALO, which belong to HALO under the terms of the Sale Order and Sale Agreement.

20.     Sellers acknowledged in the Sale Agreement that HALO would be irreparably damaged in the event any of the Sellers' obligations set forth in the Sale Agreement were not performed.  (Sale Agreement, §7.14).   Therefore, in addition to its other rights and remedies, HALO is entitled to seek specific performance of the Sellers' obligations and temporary and permanent injunctive relief to prevent any breach or violation.   No bond is required, and the Sellers agreed to waive any defense of an adequate remedy at law.  (Sale Agreement, §7.14).

HALO accordingly has the right to obtain specific performance of the Sellers' obligation to "promptly deliver" the Accounts Receivable Proceeds to HALO.

## COUNT I

## SPECIFIC PERFORMANCE

21.     HALO hereby incorporates by reference, as if set forth in full herein, the allegations contained in paragraphs 1 through 20 above.

22.     Despite HALO's demands, Defendants have refused to turn over property HALO acquired under the terms of the Sale Agreement, which was approved by this Court in its Sale Order.

23.     Under the Sale Agreement, in addition to its other rights and remedies, HALO is entitled to seek specific performance by the Defendants of their obligations under the Sale Agreement.

24.     Accordingly, Defendants should be ordered to specifically perform their obligations set forth in section 5.20 of the Sale Agreement and to deliver all Accounts Receivable Proceeds to HALO.

## COUNT II

## CONVERSION

25.     HALO hereby incorporates by reference, as if set forth in full herein, the allegations set forth in paragraphs 1 through 24 above.

26.     As of the Closing Date, HALO had the right to possess the Accounts Receivable and the Accounts Receivable Proceeds.

27.     Defendants have intentionally interfered with HALO's property rights, through their exercise of dominion and control over the Accounts Receivable Proceeds.

7

28.    Defendants' interference has deprive HALO of its possession and use of the Accounts Receivable Proceeds, and has thereby damaged HALO, depriving it of property it acquired through the Sale Agreement.

## COUNT III

## BREACH OF CONTRACT

29.    HALO hereby incorporates by reference, as if set forth in full herein, the allegations set forth in paragraphs 1 through 28 above.

30.    The Sale Agreement clearly and unequivocally conveyed to HALO "all accounts receivable as of the Closing Date" relating to the Clean Fun Business.   (Sale Agreement, §1.2(a)).

31.    Post-closing, HALO had the right to collect all existing Accounts Receivable, and the Sale Agreement specifically provided that the Sellers "shall not attempt to collect" any Accounts Receivable post-closing.   (Sale Agreement, §5.20).   In addition, "Sellers shall promptly deliver to [HALO] any cash, checks or other property that they may receive after the closing in respect of any Accounts Receivable." (Id.)

32.    Accordingly, as of the Closing Date, Sellers no longer had any property interest in the Accounts Receivable Proceeds.

33.    Sellers have received Accounts Receivable Proceeds exceeding $483,000.00 belonging to HALO that they refuse to deliver to HALO.

34.    Sellers have thereby breached the terms of the Sale Agreement by their failure to promptly deliver to HALO the Accounts Receivable Proceeds.

## COUNT IV

## ACCOUNTING

35.    HALO hereby incorporates by reference, as if set forth in full herein, the

8

allegations set forth in paragraphs 1 through 34 above.

36.    Under the Sale Agreement, Sellers were to promptly deliver to HALO any Accounts Receivable Proceeds relating to the Clean Fun Business.

37.    Sellers have admitted that Accounts Receivable Proceeds received after the Closing Date have not been provided to HALO.  In order to ensure proper receipt of the Accounts Receivable Proceeds, HALO requests a full accounting from Sellers of all cash, checks or other property they have received after the Closing Date with respect to any of the Accounts Receivable related to the Clean Fun Business.

## COUNT V

## IMPOSITION OF CONSTRUCTIVE TRUST

38.    HALO hereby incorporates by reference, as if set forth in full herein, the allegations set forth in paragraph 1 through 37 above.

39.    As a result of the foregoing facts, a constructive trust exists over the funds received after the Closing Date by the Sellers on account of Accounts Receivable related to the Clean Fun Business.  The Accounts Receivable Proceeds are not the property of the Sellers, and the Sellers have received the funds solely for the benefit of HALO.

40.    Therefore, the Court should impose a constructive trust upon the full value of the Accounts Receivable Proceeds wrongfully retained by the Sellers.

## PRAYER FOR RELIEF

WHEREFORE, HALO, while reserving all rights it has or may have to assert any and all other claims and potential causes of action against the Defendants, respectfully requests that this Court grant it the following relief against the Defendants:

A.  Order Defendants to specifically perform their obligations set forth in section

5.20 of the Sale Agreement and to deliver the Accounts Receivable Proceeds to HALO;

B.   Order Defendants to deliver HALO's property (the Accounts Receivable Proceeds) to HALO;

C.   Enter a judgment finding that Defendants have breached the Sale Agreement;

D.   Enter a judgment awarding breach of contract damages to HALO in the amount of the Accounts Receivable Proceeds;

E.   Order Defendants to provide an accounting of all Accounts Receivable Proceeds;

F.   Enter a judgment finding that a constructive trust exists covering the Accounts Receivable Proceeds;

G.   Award post-judgment interest at the maximum legal rate from the date of judgment herein until the date the judgment is paid in full;

H.   Award costs incurred in this Adversary Proceeding; and

I.   Grant Plaintiff such other and further relief as the Court deems just and proper.

Dated: March 21, 2017
       Wilmington, Delaware

**KLEHR HARRISON HARVEY BRANZBURG LLP**

*/s/ Linda Richenderfer*
Linda Richenderfer (DE Bar No. 4138)
919 Market Street, Suite 1000
Wilmington, Delaware 19801-3062
Telephone: (302) 426-1189
Facsimile: (302) 426-9193
Email: lrichenderfer@klehr.com

-   And –

10

Morton R. Branzburg
**KLEHR HARRISON HARVEY
BRANZBURG LLP**
1835 Market Street
Philadelphia, Pennsylvania 19103
Telephone:  215-569-2700
Facsimile:  (215) 568-6003
Email:  mbranzburg@klehr.com

*Counsel for HALO Branded Solutions, Inc.*